1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMC TECHNOLOGY, L.L.C.,<br><br>Plaintiff,<br><br>vs.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Case No. 5:11-cv-03403-PSG<br><br>[~~PROPOSED~~] *AMENDED* ORDER DISSOLVING DECEMBER 29, 2011 ORDER TO SHOW CAUSE AND DENYING AS MOOT ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL<br><br>(Re: Docket Nos. 46, 47, 54) |

In light of the substantial portion of the pleadings that the parties filed under seal, including 18 of 22 pages of the First Amended Complaint ("FAC") and a pending motion to dismiss all of the claims alleged therein, the court ordered the parties to show cause why any portion of an order on the pending motion must remain under seal. The court held a hearing on January 10, 2012. Plaintiff AMC Technology, LLC ("AMC") no longer seeks to have any documents or information remain under seal. Defendant Cisco Systems, Inc. ("Cisco") seeks to have a limited amount of information remain under seal and submitted declarations supporting the sealing of certain proprietary and commercially competitive information: (1) the amount of fees and royalties paid by (or contemplated to be paid by) Cisco for AMC's development of the OEM software, AMC's licensing of the software, and AMC's ongoing maintenance obligations; and (2)

1 product specifications and features of the Cisco Siebel Adapter.[1] Having reviewed the responses
2 and the two declarations,
3     IT IS HEREBY ORDERED that the order to show cause is dissolved.
4     IT IS FURTHER ORDERED that specific portions of the following documents shall
5 remain under seal:
6     (1) Complaint (Docket No. 1): Exhibit D, Pages 23-25; 37-61.
7     (2) Cisco's Motion to Dismiss (Docket No. 30): Page 5, line 25; Page 6, lines 2-4; Page
8         14, line 6.
9     (3) First Amended Complaint (Docket No. 34): Page 6, line 7, Exhibit D, Pages 23-25;
10         37-61.
11     (4) Cisco's Motion to Dismiss the FAC (Docket No. 39): Page 5, lines 9, 11; Page 13,
12         lines 7-8.
13     (5) AMC's Opposition (Docket No. 41): Page 16, line 28.
14     (6) Cisco's Reply (Docket No. 46): Page 8, lines 3-4.
15     The Ninth Circuit has explained that "[h]istorically, courts have recognized a 'general
16 right to inspect and copy public records and documents, including judicial records and
17 documents. This right is justified by the interest of citizens in 'keeping a watchful eye on the
18 workings of public agencies.'"[2]
19     "[A] strong presumption in favor of access is the starting point."[3] Under this standard, a
20 party seeking to seal a judicial record relating to a dispositive motion bears the burden of
21 overcoming the strong presumption of public access by articulating "compelling reasons"
22 supported by specific factual findings that outweigh the general history of access and the public
23 policies favoring disclosure.[4] The court then must "conscientiously balance[] the competing

---

[1] At the hearing, Cisco also requested that Exhibit A to the First Amended Complaint remain under seal. Exhibit A is a PowerPoint presentation. Cisco has since withdrawn the request that it remain under seal. *See* Docket No. 60.

[2] *Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1179 (9th Cir. 2006) (internal citations omitted).

[3] *Id.* at 1178.

[4] *See id.* at 1178-79.

interests" of the public and the party who seeks to keep certain information and documents under seal.[5] "[I]f the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture."[6]

Willem Evert Nijenhuis ("Nijenhuis") is a manager of product marketing in the contact center business unit at Cisco. He is familiar with Cisco's relationship with AMC and has been the primary point of contact for the two companies. In the declaration, Nijenhuis states that current or prospective OEM partners of Cisco generally are not privy to the fees and royalties paid under other OEM contracts. Cisco has another OEM partner who currently licenses a similar CRM connector and it has not disclosed to that partner the fees and royalties that were paid under the AMC OEM contract. Nijenhuis states that any disclosure of the information paid to one OEM partner could impact the demands of another OEM partner.

Nijenhuis also states that disclosure of the fees and royalties paid by Cisco to AMC would allow customers to determine Cisco's profit margin on the AMC adapters. He contends that the information could affect sales or be used as a negotiation tool on other products. Because Cisco continues to sell AMC Connectors for Microsoft Dynamics CRM, PeopleSoft, and Salesforce under the OEM contract, the pricing information available on pages 23 to 25 of the OEM contract could cause those Cisco customers to demand reductions in current profit margins.

Nijenhuis states that the details of the features of the Cisco Siebel Adapter should not be unsealed. While some features of the Cisco Siebel Adapter are available publicly in the company's marketing materials, the comprehensiveness and level of detail provided in pages 37-61 of the document entitled "AMC Application Adapter for Siebel Cisco Upgrade Document" are not and constitute trade secrets of the company.

Nijenhuis concludes that disclosure of either Cisco's fees and royalties under the AMC OEM contract or the detailed features of the Cisco Siebel Adapter could cause financial harm to the company.

---

[5] *See id.*
[6] *See id.*

1  The court finds that Nijenhuis has shown compelling reasons to seal the limited
2  information regarding (1) Cisco's payment (or contemplated payment) of fees and royalties to
3  AMC in the OEM contract; and (2) the detailed features of the Cisco Siebel Adapter. If the
4  information is not sealed, it might be used for an improper purpose, including the disclosure of
5  Cisco's trade secrets. Nijenhuis explained that disclosure of the contract terms regarding fees and
6  royalties Cisco paid (or was to pay) AMC could affect its current relationship with one OEM
7  partner and could impact negotiations with other OEM partners. Nijenhuis also explained that
8  details regarding features of the Cisco Siebel Adapter should remain under seal because the
9  product continues to be sold on the market and the functionality or limits of the functionality are
10 trade secrets. These explanations rise above any hypothesis or conjecture.

11 No later than January 27, 2012, the parties shall re-file the above documents with only the
12 redactions set forth above. The parties pending administrative motions to file under seal are
13 denied as moot.[7]

14 Dated: 1/27/2012

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[7] *See* Docket Nos. 46 and 47.